# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Michael Prezioso,

      Plaintiff,

  v.

Prudential Insurance Company of
America, Inc.,

      Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 12-1055 ADM/JSM

---

Denise Yegge Tataryn, Esq., and KrisAnn Norby-Jahner, Esq., Hellmuth & Johnson PLLC, Edina, MN, on behalf of Plaintiff.

Emily S. Costin, Esq., Alston & Bird LLP, Washington, D.C.; and Corey J. Ayling, Esq., McGrann Shea Carnival Straughn & Lamb, Chtd., Minneapolis, MN, on behalf of Defendant.

---

## I.  INTRODUCTION

On December 18, 2012, the undersigned United States District Judge heard oral argument on Plaintiff Michael Prezioso's and Defendant Prudential Insurance Company of America, Inc.'s ("Prudential") cross-motions for summary judgment [Docket Nos. 26, 31].  Prezioso claims Prudential improperly denied him long-term disability benefits under the Employee Retirement and Income Security Act (ERISA) for an on-the-job injury.  Prudential argues that its decision to deny Prezioso benefits was not an abuse of its discretion, and thus should be upheld.  For the reasons set forth below, Prudential's motion for summary judgment is granted, and Prezioso's motion for summary judgment is denied.

## II.  BACKGROUND

### A.  Prezioso's Employment and Injury

In October 2003, Michael Prezioso began working for Vertis, Inc. ("Vertis"), a Maryland corporation that sells advertising and other marketing materials.  See Aff. Emily Costin [Docket No. 34] Ex. 1 ("Admin. Record") at D000976.  Prezioso worked out of Vertis' Minnesota office and received several promotions in his first few years.  By May 2006, Prezioso was Vice President of Regional Sales.  Id.  In this capacity, Prezioso managed a staff tasked with selling advertising materials to corporate customers, including to Target Corporation, a major client.  Id. at D000977.

In 2009, however, Target discontinued its relationship with Vertis, forcing Vertis to significantly downsize its Minnesota operations.  Id.  In October 2009, Vertis concluded Prezioso was not satisfying its sales expectations and placed him on a 90-day performance improvement plan.  Id. at D000408-09.  Vertis later determined that Prezioso had not met the expectations of this plan.  Id. at D000413.

By April 2010, Vertis demoted Prezioso to Sales Representative, leaving him as Vertis' last sales employee in Minnesota.  Id. at D000977.  As an advertising sales agent, Prezioso negotiated sales from Vertis' office in Minnesota as well as by traveling to meet clients.  See id. at D0001190.  A significant amount of Prezioso's job included communicating with staff and negotiating with clients in person, by phone, or over email.  See id. at D000566-67, 1190. Prezioso was also occasionally required to lift light objects, such as when he visited clients to display sample advertisements or art.  See id.  Prezioso was occasionally required to lift objects up to 20 pounds in weight.  Id.

On April 2, 2010, Vertis placed Prezioso on a second performance improvement plan, citing a failure to meet sales goals. The plan warned Prezioso that if he did not meet expectations by May 2, 2010, Prezioso faced "further disciplinary action up to and including [] termination." Id. at D000406. Prezioso argues that the performance improvement plans placed "unrealistic" expectations on him and measured revenue, a benchmark that was beyond his control. Pl.'s Mem. in Opp. Summ. J. [Docket No. 44]. Nevertheless, about a month later, Vertis determined that Prezioso had not made "material progress" toward its expectations. Admin. Record at D000413. Vertis thus issued a "Request for Termination," concluding that Prezioso had again failed to meet sales goals and should be terminated. Id. at D000413-14.

On May 10, 2010—shortly after Vertis decided to terminate Prezioso but before it communicated the decision to him—Prezioso injured himself while lifting a 15-pound art portfolio onto a customer's counter. See id. at D000426, D000977. Prezioso informed a human resources employee at Vertis of his injury and his inability to work for the remainder of the day. Id. at D000978. He also informed Vertis that he had scheduled a doctor's appointment for the following day. Id.

This was not Prezioso's first back injury. In 1981, before his employment with Vertis, Prezioso had back surgery for a ruptured spinal disk but returned to work afterwards. Id. at D000977. In May 2009, Prezioso also suffered a back injury in the course of his employment for Vertis. Id. After that injury, Prezioso received two steroid injections and anti-inflammatory medication, and was able to return to work on a full-time basis. See id.

At his appointment on May 11, 2010, Dr. John Dowdle diagnosed Prezioso with

mechanical lower back pain, degenerative disk disease of the lumbar spine,[1] and "acute exacerbation of low back pain." Id. at D000507. Dr. Dowdle advised Prezioso to return for an appointment in one week, writing, "I would anticipate that he should be dramatically better when he is seen in 1 week." Id. The doctor also completed a report stating Prezioso was unable to work until May 18, 2010. Id. at D000506. Prezioso faxed this report to Vertis. Id. at D000318-20.

A few hours later, still on May 11, 2010, Vertis met with Prezioso and terminated his employment. Id. at D000978. After his termination, Prezioso continued to see doctors in connection with his back injury. On May 18, 2010, Dr. Dowdle performed an examination in which he observed Prezioso as "well groomed, well nourished, in no acute distress, [and] pleasant and cooperative." Id. at D001073. However, Dr. Dowdle noted that Prezioso was "tender to palpation of lumbar spine" and had "some paraspinal muscle spasm," which limited his range of motion. Id. An MRI scan of Prezioso's lumbar spine was ordered to "find out why [Prezioso] has such [an] increase in his symptoms." Id.

Dr. Dowdle's clinic performed the MRI on May 26, 2010. Upon review, Dr. Dowdle concluded that the MRI showed a "degenerative disk at the L4-L5 level with moderate degenerative disk disease." Id. at D001081. Prezioso's diagnosis was "mechanical low back pain with recurrent episodes of back and leg pain due to a degenerative disk at the L4-L5 level."

---

[1] The vertebral column is divided into three sections. The cervical vertebrae are those at the top of the column supporting the head and neck; the thoracic vertebrae are in the middle, and the lumbar vertebrae are at the lowest position, connecting to the hip. The vertebrae are numbered from top to bottom accordingly, with the cervical vertebrae numbered starting with C1, the thoracic vertebrae numbered starting with T1, and the lumbar vertebrae numbered starting with L1. Human Skeletal System, in Encyclopædia Britannica (Online Academic Ed. 2013), available at http://www.britannica.com/EBchecked/topic/547358/human-skeletal-system.

4

As initial treatment, Dr. Dowdle ordered an "active exercise program" at Physicians Neck and Back Clinics ("PNBC"), and wrote that if Prezioso did not improve, he might be a candidate for spinal fusion.  Id.  In addition, Dr. Dowdle noted that Prezioso was "not able to walk a distance because of persistent continued back pain," and that "[a]t this point, it is my opinion he is not able to work."  Id.

On June 8, 2010, Dr. Katherine L. Anglin of PNBC conducted an initial examination of Prezioso.  See id. at D001085.  Dr. Anglin observed Prezioso moving "fairly easily about the room" with a normal gait, although he complained of lower back pain and had a limited range of motion due to this pain.  Id. at D001087.  Dr. Anglin diagnosed Prezioso with chronic, recurrent low back pain, lumbar disc syndrome, non-specific thoracic pain, and, in particular, deconditioning syndrome.  Id. at D001088.  In terms of treatment, Dr. Anglin recommended that Prezioso begin PNBC's rehabilitation program.  She stated that the goals were to "avoid surgery, speed healing, return to activities, and, most importantly, to prevent recurrence."  Id.  At this time, Prezioso's prognosis was "fair," and she expected Prezioso to largely recover in 9-12 weeks.  Id. at D001089.

On July 21, 2010, at the recommendation of Dr. Dowdle, Prezioso underwent a discography.  Id. at D000736.  The procedure indicated that Prezioso had "abnormal disc morphology" at the L4-5 and L5-S1 discs.  Id. at D000737.  At a meeting with Dr. Dowdle on August 3, 2010, the doctor noted that Prezioso had participated in physical therapy at PNBC and was "not making any progress, in fact getting worse."  Id. at D000748.  Dr. Dowdle decided to present Prezioso's "case and films" for consideration of a spinal fusion at the L4-5, L5-S1 level.  Id.  at D000749.  Prezioso's diagnosis was still mechanical low back pain and degenerative disc

disease.  Id.  Dr. Dowdle also recorded a normal range of motion in the thoracic spine and lumbar spine.  Id. at D000748.

On August 17, 2010, upon the referral of Dr. Dowdle, Prezioso went to the Midwest Spine Institute, LLC, for a second opinion.  Id. at 000753.  Dr. Stefano M. Sinicropi observed partial sacralization at the L5-S1 disc segment.  Id. at D000757.  Dr. Sinicropi theorized that this disc may not have troubled Prezioso in the past, but Prezioso's "injury overcame this and clearly this disc has become painful after his work-related injury given the positive concordant discography."  Id. at D000757-758.  Dr. Sinicropi ordered a CT scan and reviewed the results on October 12, 2010.  The CT scan showed "fair significant distortion of the left facet joint," along with "some protrusion into the canal of this region," which suggested nerve impingement.  Id. at D001114.  Dr. Sinicropi recommended surgical fusion, noting that Prezioso was "certainly miserable with his symptoms," and that surgery had an "excellent chance" of improving his pain symptoms.  Id. at D001115.

The next day, on October 13, 2010, Prezioso was in an automobile accident.  A semi-trailer truck backed into Prezioso's vehicle, leaving Prezioso complaining of numbness in his left hand, neck pain, and continued lower back pain.  Id. at D001112.  On October 26, 2010, Dr. Sinicropi concluded that the accident both aggravated Prezioso's existing disc problems but also likely caused a cervical spine injury.  Id. at D001113.  The doctor also noted that "[g]rossly, [Prezioso] was neurologically intact," and that Prezioso's "[s]ensation was intact."  Id.  On February 8, 2011, Dr. Sinicropi concluded that Prezioso had "[t]raumatic C5-C6 disc injury" as a result of his accident.  Id. at D000153.  In particular, Prezioso had a 25% range of motion in all directions of his cervical spine, with pain and numbness on his left side.  Id.

Several months later, on June 24, 2011, Prezioso underwent spinal fusion surgery on his lumbar spine.  Id. at D000151.  Dr. Sinicropi performed the operation.  See id.  Despite the surgery, Prezioso has continued to report significant pain and numbness.  See Pl.'s Mem. Supp. Summ. J. [Docket No. 32] 9-11.

## B.  Vertis' Long-Term Disability (LTD) Plan

Vertis offered Prezioso both short-term and long-term disability plans.  In this case, Prezioso seeks only long-term disability ("LTD") benefits.[2]  Prudential insures Vertis' LTD plan (the "Plan") through a Group Insurance Contract and also handles the administration of claims made under the Plan.  See id. at D001276-1289.  In addition to the Group Insurance Contract, the Plan includes three Group Insurance Certificates (the "Certificates"), which outline benefits for employees in three classes: (I) executives under 60 years old; (II) executives over 60 years old; and (III) all other full-time employees.  See id. at D001290-1334, D001335-79, D001380-1427.  Each Certificate also has its own, brief Summary Plan Description ("SPD") designed to provide insured employees with a summary of benefits and required ERISA disclosures.

As Prudential notes, Vertis placed Prezioso in Class I during the claim submission process.  Id. at D000983.  Nevertheless, Prezioso has consistently argued he belongs in Class III.  See Compl. ¶ 8; Pl.'s Mem. Supp. Summ. J. 1.  Although aspects of the Plan differ among the three classes, each class's Certificate defines disability using the same terms.  Compare id. at D001302 with id. at D001392.  For this reason, Prudential does not contest Prezioso's asserted class under the Plan.  See Def.'s Mem. Supp. Summ. J. [Docket No. 28] 4-5.  To qualify for LTD

_____

[2]  Prudential provides claims administration for Vertis' short-term disability plan, but Vertis pays any awarded STD benefits.  See Admin. Record D001237-1275.

benefits, a Class III employee must be continuously disabled for 180 days (the "Elimination Period"). Admin. Record at D001393. An employee is considered disabled when Prudential determines: (1) the employee is "unable to perform the material and substantial duties of [his or her] regular occupation" due to sickness or injury; and (2) the employee has a "20% or more loss in [his or her] indexed monthly earnings due to that sickness or injury." Id. at D001302.

The Certificate, in turn, defines "material and substantial duties" as: (1) those that "are normally required for the performance of your regular occupation"; and (2) which "cannot be reasonably omitted or modified, except that if you are required to work on average in excess of 40 hours per week, Prudential will consider you able to perform that requirement if you are working or have the capacity to work 84 bi-weekly hours." Id. Prudential also states in the Plan that it will "look at your occupation as it is normally performed instead of how the work tasks are performed for a specific employer or at a specific location." Id.

## C. Prezioso's Disability Claim

Prezioso first applied for STD benefits with Prudential, although the date of his application is unclear from the record. See Compl. ¶ 64. He then applied for LTD benefits on or about November 11, 2010, about six months after his injury. Id. at D000931-944. In support of his application, Prezioso submitted several of his medical records. Prezioso also submitted "work ability" reports in which Drs. Dowdle and Sinicropi stated that Prezioso had been unable to work since his injury on May 10, 2010. See id. at D000945-966.

On or about January 18, 2011, Prudential denied Prezioso's claim for STD benefits. Vertis had incorrectly informed Prudential that Prezioso's date of disability was May 12, 2010: the day after Prezioso's termination. See id. at D001233. Prudential thus concluded that

Prezioso's disability fell outside of Plan coverage. Prudential did inform Prezioso he could appeal the denial of STD benefits. Id. at D001233-34.

At the time, Prudential did not formally approve or deny Prezioso's application for LTD benefits. Instead, it held his LTD application in abeyance pending the appeal of his STD claim. See id. Prudential argues that the initial denial of Prezioso's STD benefits claim was an implicit denial of his LTD benefits claim, because failing to qualify for STD benefits necessarily meant Prezioso did not qualify for LTD benefits. See Def.'s Reply [Docket No. 47] 7-8. Although Prezioso takes issue with this reasoning, he nevertheless agrees that Prudential's initial denial of his STD benefits claim functionally amounted to a denial of his LTD claim. See Pl.'s Mem. Supp. Summ. J. 14.

On March 18, 2011, Prezioso appealed the denials of both his STD and LTD benefits claims, and clarified that his injury occurred on May 10, 2010, with his termination occurring the following day. See id. at D000968-975. As a result, Prudential considered Prezioso's claim on its merits. Prudential sought an independent review from Dr. Ephraim Brenman, a board-certified practitioner in Physical Medicine and Rehabilitation as well as Pain Medicine, and a Diplomate in Electrodiagnostic Medicine. Id. at D000579-584. Dr. Brenman concluded that before his car accident in October 2010, Prezioso was suffering from "significant" foraminal stenosis[3] in his lumbar spine and that Prezioso was subject to "restrictions and limitations" during the entire Elimination Period. Id. at D000581. In particular, Dr. Brenman wrote that Prezioso should not lift objects heavier than 25 pounds, and he should only occasionally squat or

---

[3] Foraminal stenosis is a narrowing of the neural foramina, the openings through which spinal nerves leave the spinal column. Spinal Stenosis (2012), http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0001477/.

reach for items below waist level.  Id. at D000582.  Dr. Brenman also wrote that Prezioso should

not sit for more than two continuous hours without a five-minute stretching break, and that he

could do so "throughout a six hour day."  Id.  However, Prezioso could reach at desk level and

perform repetitive upper extremity activity without restriction, and could also walk and stand

without restriction.  Id.

Dr. Brenman concluded Prezioso's October 2010 accident caused nerve root irritation

and foraminal stenosis in Prezioso's cervical spine.  Id.  As a result of these additional injuries,

Dr. Brenman wrote that Prezioso should abide by the same weight restrictions, but that he should

also take breaks from repetitive upper body activity at least every two hours.  Id.  Without

surgery, Dr. Brenman believed Prezioso's lower back symptoms would last indefinitely, while

his cervical spine injury symptoms would last up to 12 months.  Id.  Overall, based on his review

of Prezioso's medical records, Dr. Brenman concluded that Prezioso's claim that he was unable

to work was "not supported and consistent with the documentation provided for review."  Id.  at

D000583.

Irene Morris, a Certified Rehabilitation Counselor ("CRC") hired by Prudential,

performed a vocational review of Prezioso's claim.  Morris determined, based on a review of

occupational database information, that "[m]any advertising sales agents work more than 40

hours per week," and that although the "hours are long and often irregular, most have the

freedom to determine their own schedule."  Id. at D001190.  She also noted that internet and

electronic communications had facilitated working remotely or while traveling.  Id.  In terms of

physical movement, Morris wrote that the job required the occasional lifting and carrying of

items up to 20 pounds, with frequent lifting of items up to 10 pounds.  Id. at D001192.  Given

the relative flexibility of an advertising sales agent's work, Morris concluded that Prezioso would most likely have the ability to take breaks from repetitive typing and other tasks.  Id.

On June 15, 2011, Prudential denied Prezioso's first appeal of his claims for STD and LTD benefits.  Id. at D001218-24.  The denial letter informed Prezioso he could choose to appeal his LTD benefits claim with Prudential a second time, or proceed to file suit under ERISA.  Id. at D001223-24.  If Prezioso opted for a second appeal, Prudential had 45 days within which to respond, with the option to extend this time limit by another 45 days.  Id. at D001234.

At the same time that he had first appealed his claims with Prudential, Prezioso had also filed a claim for Social Security Disability (SSD) benefits from the Social Security Administration (SSA).  See id. at D000458-463.  In its decision issued June 27, 2011, the SSA found Prezioso's reports of severe pain to be credible in light of the supporting medical examinations and diagnoses.  See id. at D000461.  The SSA concluded that while Prezioso had "residual functional capacity" to perform sedentary work, he was subject to several restrictions.  Id. at D000460-461.  Namely, Prezioso could not sit for up to six hours, he could not stand or walk "for even two hours" during an eight hour workday, and he could not lift and carry objects weighing over ten pounds.  Id. at D000460.  Because these restrictions prevented Prezioso from performing "the full range of sedentary work," he was determined to be disabled.  Id. at D000462-463.

On December 8, 2011, Prezioso appealed his LTD benefits claim with Prudential.  Prezioso submitted a detailed letter along with various exhibits, including Plan documents, Vertis employment records and communications, and a copy of Prezioso's SSD decision.  See generally, id. at D000169-575.  In his appeal letter, Prezioso argued that Dr. Brenman was not a

neurologist and thus did not have sufficient expertise to evaluate Prezioso for "neurological disorders."[4] Id. at D000184. In addition, Prezioso argued that Dr. Brenman had significantly under-estimated Prezioso's average work hours per week in concluding that Prezioso could sit "throughout a six hour day." Id. at D000185. According to Prezioso, Dr. Brenman had thus concluded that Prezioso was only fit to work 30 hours per week, well under the requirements of an advertising sales agent. Id. at D000186.

On or about December 21, 2011, Prudential sent a letter to Prezioso informing him that it intended to issue a decision on his second appeal by January 22, 2012. Id. at D001216. Prudential also requested a copy of Prezioso's SSD award letter and any related medical examinations. Id. On or about January 20, 2012, Prudential informed Prezioso that it was continuing to review his appeal, but that it would require a 45-day extension. Id. at D001215. Then, on or about March 7, 2012, Prudential requested an additional 30-day extension from Prezioso's attorney, who denied the request. Id. at D001211. Prudential stated that it nevertheless intended to continue its review of Prezioso's claim, and would issue a determination by April 6, 2012. Id. However, Prudential did not complete its review by April 6, and Prezioso initiated this action on April 27, 2012. Id.

After the start of litigation, Prezioso brought a Motion to Exclude Documents From the Record [Docket No. 10] ("Motion to Exclude"). Prezioso sought an order excluding from the Administrative Record certain documents Prudential possessed that post-dated the start of

---

[4] A neurological deficit, discussed by both parties and their doctors, is a "functional abnormality of a body area due to a decrease in the function of the brain, spinal cord, muscles, or nerves." Neurologic Deficit (2011), http://www.nlm.nih.gov/medlineplus/ency/article/002267.htm. Examples include decreased sensation, loss of balance, and weakness. Id.

litigation.  See id.  Magistrate Judge Mayeron granted the motion.  Order, Oct. 31, 2012 [Docket No. 24].  In doing so, Judge Mayeron held that both ERISA and Prudential's own Plan required Prezioso's second appeal to be "deemed denied" by Prudential as of April 6, 2012, and no later than April 27, 2012.  See id. at 14.

## III.  DISCUSSION

### A.  Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment shall be rendered if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  On a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).  However, the nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial."  Krenik v. Cnty. of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995) (citations omitted).  If evidence sufficient to permit a reasonable jury to return a verdict in favor of the nonmoving party has been presented, summary judgment is inappropriate.  Id.  However, "the mere existence of some alleged factual dispute between the parties is not sufficient by itself to deny summary judgment. . . .  Instead, 'the dispute must be outcome determinative under prevailing law.'"  Get Away Club, Inc. v. Coleman, 969 F.2d 664, 666 (8th Cir. 1992) (citations omitted).

### B.  Standard of Review for Prezioso's Benefits Claim

#### 1.  Discretionary Language in Plan

If an ERISA benefits plan confers discretion on a plan administrator to interpret the terms of the plan and determine eligibility for benefits, a court reviewing the administrator's decision

will do so under the deferential abuse of discretion standard.  Walke v. Group Long Term Disability Ins., 256 F.3d 835, 839 (8th Cir. 2001) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  Otherwise, the reviewing court will by default proceed with a de novo review.  Groves v. Metro. Life Ins. Co., 438 F.3d 872, 873-74 (8th Cir. 2006).

The Eighth Circuit Court of Appeals has held that an ERISA plan will only confer discretion if it uses "explicit discretion-granting language."  Bounds v. Bell Atl. Enters. Flexible Long-Term Disability Plan, 32 F.3d 337, 339 (8th Cir. 1994).  Use of the phrases "as determined [by the administrator]" and "all proof must be satisfactory to us" have been found sufficient to confer discretion.  See id. (citations omitted); see also Walke, 256 F.3d at 839-40 (holding phrase "satisfactory proof of Total Disability to us" sufficient to confer discretion).  The ERISA plan must clearly grant discretion to the administrator; if the Summary Plan Description (the "SPD") alone grants discretion while other policy documents are silent or indicate a lack of discretion, the court must conduct a de novo review.  See Jobe v. Med. Life Ins. Co., 598 F.3d 478, 482-86 (8th Cir. 2010).  The only exception to this rule may be if the ERISA plan specifically allows for amendment by the SPD.  See Ringwald v. Prudential Ins. Co. of Am., 609 F.3d 946, 949 (8th Cir. 2010) (interpreting Jobe).

In this case, the parties dispute the applicable standard of review based on the Plan's language.  Prezioso argues that the only discretion-conferring language in any of the plan documents is in the SPD, and that as a result the Court must apply a de novo review.  The SPD states that Prudential "has the sole discretion to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefit."  Id. at D001422.  Prudential responds that in addition to the SPD, the Certificate itself includes language conferring

14

discretion to Prudential. Specifically, the Certificate states that a claimant is disabled "when Prudential determines" that the claimant meets the Certificate's definition of disabled. <u>Id.</u> at D001392. In addition, the claimant may, at Prudential's request, be required to send proof of continuing disability "satisfactory to Prudential . . . ." <u>Id.</u> at D001406.

The Plan explicitly grants discretion to Prudential. The Eighth Circuit has held that even small changes in plan language can alter the applicable standard of review. In <u>Walke</u>, the court held that adding the words "to us" to the phrase "the insured must submit satisfactory proof of disability" in an ERISA plan would alter the level of review from de novo to abuse of discretion. <u>See</u> <u>Walke</u>, 256 F.3d at 839-40. Here, the Certificate uses the phrase "satisfactory to Prudential," in the context of submitting proof of continuing disability. Although submitting satisfactory proof of continuing disability is not the same as making the initial determination of disability, the use of this phrase indicates Prudential intended to retain discretion over plan administration. Perhaps more importantly, the Certificate states that a claimant is disabled "when Prudential determines" that the person is disabled. This language is similar to the example discussed in <u>Bounds,</u> and further confirms that the Plan granted Prudential discretion in its administration of benefits. <u>See</u> <u>Bounds</u>, 32 F.3d at 339 (citing <u>Finley v. Special Agents Mut. Benefit Ass'n</u>, 957 F.2d 617, 620-21 (8th Cir. 1992)).

The Certificate language, combined with the explicit grant of discretion in the SPD, support an abuse of discretion review. <u>See</u> <u>Rittenhouse v. UnitedHealth Group Long Term Disability Ins. Plan</u>, 476 F.3d 626, 629-630 (8th Cir. 2007) (reviewing language in both insurance policy and SPD and concluding ERISA plan conferred discretion to plan administrator); <u>see also</u> <u>Humphrey v. Prudential Ins. Co. of Am.</u>, 791 F. Supp. 2d 655, 664 (D.

Minn. 2011) (holding identical plan language conferred discretion to Prudential).

### 2. Procedural Error

In addition to challenging the level of discretion granted by the Plan, however, Prezioso argues Prudential committed a serious procedural error by failing to issue a second appeal decision. The Eighth Circuit has held that de novo review of a plan administrator's decision is appropriate when the administrative record reflects a "serious procedural irregularity" that "caused a serious breach of the plan administrator's fiduciary duty." Woo v. Deluxe Corp., 144 F.3d 1157, 1160 (8th Cir. 1998), abrogated on other grounds, Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 117-19 (2008); see also Carr v. Anheuser Busch Cos., Inc., No. 12-224, 2012 WL 6685323, at *5-6 (8th Cir. Dec. 21, 2012) (slip copy) (noting Glenn may not have abrogated procedural irregularity holding in Woo).

Even where a serious procedural irregularity exists, it will only trigger de novo review if the irregularity causes serious doubt as to the integrity of the claims administration process. De novo review may be warranted where "the plan trustee failed to inquire into the relevant circumstances at issue, or never offered a written decision that can be reviewed, or committed irregularities so severe that the court 'has a total lack of faith in the integrity of the decision making process.'" Pralutsky v. Metro. Life Ins. Co., 435 F.3d 833, 838 (8th Cir. 2006) (quoting Buttram v. Cent. States, S.E. & S.W. Areas Health & Welfare Fund, 76 F.3d 896, 900 (8th Cir. 1996)).

An ERISA plan administrator's failure to timely issue a decision on a second appeal, while a serious error, does not automatically require de novo review of the administrative record. In McGarrah v. Hartford Life Ins. Co., 234 F.3d 1026 (8th Cir. 2000), Hartford terminated

plaintiff McGarrah's LTD benefits after conducting an investigation and issuing a notice

informing McGarrah why it had determined he was no longer disabled.  See id. at 1027-29.

McGarrah appealed the decision to Hartford and submitted two supporting statements from

attending physicians.  Id. at 1029.  Hartford failed to respond, and McGarrah commenced a

lawsuit.  Id.  On review, the Eighth Circuit held that Hartford conducted a thorough investigation

and that Hartford's termination letter sufficiently stated the bases for its decision.  As a result,

"[f]rom a substantive standpoint, McGarrah's appeal required no response by Hartford to permit

meaningful judicial review."  Id. at 1031.  The court also noted that the only evidence McGarrah

had submitted on appeal was neither novel nor inconsistent with earlier evidence, and thus did

not undermine the court's "confidence in the integrity of [Hartford's] decision-making process."

Id.

     The Eighth Circuit has since revisited its holding in McGarrah.  See Seman v. FMC

Corp. Ret. Plan for Hourly Emps., 334 F.3d 728 (8th Cir. 2003).  In Seman, the Eighth Circuit

was confronted with a case in which, unlike McGarrah, the plaintiff submitted "much more

medical evidence in connection with his appeal. . . ."  Seman, 334 F.3d at 733.  In support of his

initial benefits application, the plaintiff in Seman submitted a total of three pages of documents,

two of which related to non-binding administrative decisions.  Id.  On appeal, he submitted five

doctors' reports and related test results, none of which the administrator previously possessed.

Id.  Nevertheless, the administrator failed to issue an appeal decision.  Id. at 732.  In reaching its

holding, the Eighth Circuit summarized the underlying ruling in McGarrah:

> When a plan administrator fails to render any decision whatsoever on a
> participant's application for benefits, it leaves the courts with nothing to review
> under any standard of review, so the matter must be sent back to the administrator
> for a decision. When a plan administrator denies a participant's initial application

17

for benefits and the review panel fails to act on the participant's properly filed appeal, the administrator's decision is subject to judicial review, and the standard of review will be de novo rather than for abuse of discretion if the review panel's inaction raises serious doubts about the administrator's decision.

Id. at 733 (harmonizing McGarrah with Shelton v. ContiGroup Co., 285 F.3d 640, 642 (8th Cir. 2002)).  In Seman, however, the administrator's failure to consider substantial new medical evidence raised "serious doubts" about the integrity of the administrator's decision.  See id.  The court thus held de novo review was appropriate.  See id.

Although Prezioso submitted a large volume of documents to supplement the record on his second appeal with Prudential, the majority of these documents provided little or no new information for Prudential to consider.  While the affidavits Prezioso and his partner submitted describing Prezioso's pain symptoms and mobility limitations are important, they do not offer additional information so much as support Prezioso's past claims of pain and limited mobility. See Admin. Record at D000194-D000208.  Of less value are the documents Prezioso submitted relating to his employment at Vertis.  See id. at D000209-298, D000320-425.  These documents include sales-related emails between Prezioso and former customer Target, a copy of Prezioso's Form W-4 from 2003, and copies of the Plan Certificates Prudential issued.  See id.

In terms of medical records or other medical evidence, Prezioso's submissions on his second appeal were of similarly marginal value.  Prezioso included copies of his SSA award and decision, which appear to be based on the same diagnoses and symptoms Prezioso had previously submitted to Prudential.  See id. at D000458-463.  The second appeal also included additional "work ability" reports and evaluations, some dated well past the Elimination Period, and none of which presented significantly new or different information.

Prezioso also submitted a letter from Dr. Sinicropi, who wrote that while Dr. Brenman

18

may have reviewed Prezioso's records, "[h]e did not evaluate the patient." Id. at D000573. Dr. Sinicropi affirmed the necessity of spinal fusion surgery and wrote that Prezioso had been "totally disabled" since May 10, 2010. Id. Dr. Sinicropi's letter did not offer additional medical evidence or information, but rather supported Prezioso's reports of serious pain.

To challenge Ms. Morris' vocational determination, Prezioso supplied the evaluation of Veronica Johnson and Angie Hunter, CRC, rehabilitation consultants. Ms. Johnson and Ms. Hunter based their report on Prezioso's prior medical evaluations and their assessments of his credibility in reporting pain, and concluded Prezioso was unable to perform the duties of an advertising sales agent. See id. at D000564-570. While each of the additionally-submitted materials supports Prezioso's claim, none of them presented new issues or evidence that might fundamentally alter Prudential's initial determination.

After Prezioso filed his second appeal, Prudential also began its own collection of additional information. In response to Prezioso's argument that Dr. Brenman was not qualified to diagnose neurological deficits, Prudential obtained an independent review from Dr. Leonid L. Topper, a board-certified practitioner of Psychiatry and Neurology and Neurology. Id. at D000007-24. Dr. Topper reviewed the various medical records Prezioso submitted, including the affidavits, the SSA decision, and the response letter from Dr. Sinicropi. In his report, Dr. Topper acknowledged Prezioso's complaints of potential neurological deficits such as weakness and numbness, but concluded that the evidence did not support "any specific neurological diagnosis." See id. at D000020-21. Regarding work ability, Dr. Topper wrote that "from a neurological point of view, the claimant is not functionally impaired. . . ." Id. at D000022.

Dr. Richard Day, a Vice President and the Medical Director of Prudential, reviewed Dr.

Brenman's and Dr. Topper's report and concurred in their observations. In particular, Dr. Day concluded that while Prezioso should be "physically/mechanically" able to perform his job duties but his tolerance for sustained work activity was unclear. Id. at D001165. Dr. Day requested that Dr. Brenman review Prezioso's appeal information, particularly because Preizoso had undergone spinal fusion in June 2011, a procedure beyond Dr. Topper's expertise. See id. at D001164-65.

On March 23, 2012, Dr. Brenman conducted a second review of Prezioso's condition. See id. at D000027-32. Dr. Brenman reviewed the additional evidence Prezioso submitted on his second appeal, including the SSA decision and Dr. Sinicropi's letter challenging Dr. Brenman's initial determination. Id. at D000027-30. Dr. Brenman concluded that there was no evidence of neurological deficit, no "verifiable signs of radiculopathy,"[5] and "no diagnostic testing . . . that would support the claimant's ongoing subjective complaints." Id. at D000031. Dr. Brenman thus stood by his initial work restriction and limitation determinations, though he noted that Prezioso would require time to recover from surgery. Id. at D000030.

Despite Plaintiff's arguments, this case bears a closer resemblance to McGarrah than to Seman. On his second appeal, Prezioso did not submit drastically new or voluminous information like the plaintiff in Seman did; instead, Prezioso submitted personal affidavits and some additional evidence to bolster his initial claim. As a result, the underlying rationale for Prudential's decision, while challenged, remained applicable. The additional medical opinions

---

[5] Radiculopathy is "a pathologic process affecting the nerves at the root level. In descending order, it most commonly presents as pure sensory complaints, sensorimotor complaints, or pure motor complaints. This is due to the larger size of the sensory fibers rendering them more prone to injury." Radiculopathy (2004), http://www.ncbi.nlm.nih.gov/books/NBK27309/.

Prudential obtained similarly did nothing to disturb Prudential's determination; on the contrary, both doctors' reports supported it. Further, Prudential remained in contact with Prezioso and attempted to obtain an extension of its time to evaluate the appeal before the request was denied by Prezioso's counsel. The evidence in the record permits "meaningful judicial review" and does not warrant a "total lack of faith" in the integrity of Prudential's decisionmaking process. See McGarrah, 234 F.3d at 1031. Review of Prudential's decision under the abuse of discretion standard is appropriate.

### 3. Abuse of Discretion

The abuse of discretion standard requires a reviewing court to defer to the ERISA plan administrator's decision, but it "is not tantamount to rubber-stamping the result." Torres v. UNUM Life Ins. Co. of Am., 405 F.3d 670, 681 (8th Cir. 2005). The reviewing court must determine whether the disability determination is reasonable, "which requires that it be supported by substantial evidence that is assessed by its quality and quantity." Id. (citations omitted). Courts have defined "substantial" evidence as "more than a scintilla but less than a preponderance." Schatz v. Mut. of Omaha Ins. Co., 220 F.3d 944, 950 (8th Cir. 2000). The Eighth Circuit has also held that "reasonable" means a "reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." Ferrari v. Teachers Ins. and Annuity Ass'n, 278 F.3d 801, 807 (8th Cir. 2002) (quoting Donaho v. FMC Corp., 74 F.3d 894, 898 n.5 (8th Cir. 1996)).

Eighth Circuit courts also employ five factors in reviewing an ERISA benefits decision for abuse of discretion: (1) whether the administrator's interpretation is consistent with the goals of the Plan; (2) whether the interpretation renders any language in the Plan meaningless or

internally inconsistent; (3) whether the administrator's interpretation conflicts with the substantive or procedural requirements of the ERISA statute; (4) whether the administrator has interpreted the relevant terms consistently; and (5) whether the interpretation is contrary to the clear language of the Plan. Shelton, 285 F.3d at 643. In this case, the parties do not dispute a particular interpretation of the Plan, but contest whether Prudential had sufficient factual support to deny benefits to Prezioso.

## C. Prudential's Denial of Benefits

The parties do not dispute several of the fundamental elements of Prezioso's diagnosis resulting from his injury on May 10, 2010. Dr. Dowdle, after reviewing the results of an MRI scan, diagnosed Prezioso with moderate degenerative disk disease, and specifically identified a degenerative disk at the L4-L5 level which caused "mechanical low back pain." Admin. Record at D001081. Dr. Anglin concurred with this diagnosis. Id. at D001088. Dr. Sinicropi also concurred, though he also diagnosed nerve impingement resulting from the disk degeneration. See id. at D001115. Prudential's reviewer, Dr. Brenman, agreed that degenerative disk disease had caused degeneration at the L4-L5 level, and that nerve impingement was causing lower back pain, which was aggravated by Prezioso's May 2010 injury. Id. at D000581-84. Prezioso's and Prudential's doctors also agreed that his October 2010 car accident caused injury to Prezioso's cervical spine. Id. at D001113, D000582. And they ultimately agreed that surgical fusion of discs in the lumbar spine was appropriate, though Prezioso's doctors initially believed that physical therapy would rehabilitate him. Id. at D000583, D000757-758, D001081-1089.

The disagreement here centers on the degree of Prezioso's pain and his suffering of neurological deficits. With regard to pain, Prezioso has presented considerable documentation,

both in reports to his doctors and in affidavits about his home life. While Prudential cannot ignore a claimant's reports of serious pain, Prudential is entitled to weigh these reports against contrary evidence. See, e.g., Huberty v. Standard Ins. Co., No. 06-cv-2388, 2008 WL 783407, at *37 (D. Minn. Mar. 25, 2008) (finding abuse of discretion where administrator ignored overwhelming evidence of pain); see also Johnson v. Metro. Life Ins. Co., 437 F.3d 809, 814 (8th Cir. 2006) ("When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial.").

In his initial review, Dr. Brenman acknowledged Prezioso's low back pain and further recognized that Prezioso would be subject to work limitations for the foreseeable future.[6] But Dr. Brenman concluded, based on a review of the evidence, that Prezioso's claim of total disability was not supported by or consistent with his medical records. Prudential also obtained a vocational review from Ms. Morris, who concluded that while Prezioso would face limitations, he should be able to perform the duties of an advertising sales agent. In short, Prudential did not ignore Prezioso's reported pain or state that Prezioso had no limitations as a result; instead, it acknowledged Prezioso's limitations but concluded his pain should not be as limiting as he reported. While another evaluator might have decided otherwise, Prudential reached the reasonable conclusion that Prezioso's pain did not prevent him from performing his work duties

---

[6] Prezioso's argument that Dr. Brennan concluded Prezioso could not work for more than 30 hours a week is not persuasive. As noted above, Dr. Brenman wrote in his initial review that Prezioso should not sit for more than two hours at a time and "the claimant could do throughout [sic] a six hour day." Id. at D000582. The wording of Dr. Brenman's sentence is somewhat ambiguous, but in the same report the doctor also notes that Preizoso should be able to work "on a consistent full time basis" and that he had no time limits as to standing and walking. Id.

subject to several accommodations.

The medical evidence Prudential began collecting during Prezioso's second appeal further supports Prudential's determination. As noted, Dr. Day—admittedly not an independent reviewer—concluded that "[f]rom an orthopedic perspective," Prezioso was physically able to perform his job duties, but his pain tolerance for "sustainable work activities" was unclear. Id. at D001165. He thus recommended a second review by Dr. Brenman. Id. As requested, Dr. Brenman reviewed the medical record again, including Prezioso's new submissions, and confirmed his original opinion. Dr. Brenman acknowledged Prezioso's "many subjective complaints, including right leg dysesthesia," but saw "no verifiable signs of radiculopathy" or any evidence prompting a neurological diagnosis. Id. at D000030. The doctor thus wrote that "from a physical medicine, rehab and pain standpoint, the claimant was still able to work" with the stated restrictions and limitations. Id. at D000031.

Similarly, Prudential had sufficient basis to conclude Prezioso did not suffer from neurological deficits. In October 2010, after Prezioso's car accident, Dr. Sinicropi observed that Prezioso was "neurologically intact". Id. at D001113. In his present motion, Prezioso concedes that he has no diagnosis of neurological deficit. Nevertheless, Prezioso points to his various reports of numbness, tingling, and radiculopathy as proof of neurological symptoms. Pl.'s Mem. Supp. Summ. J. 21-23. In his initial review, Dr. Brenman noted what Prezioso now concedes: Prezioso had no specific medical findings supporting a diagnosis of neurological deficit. Id. at D000583. But, Dr. Brenman did not ignore Prezioso's complaints of numbness and tingling in his extremities, concluding instead that such symptoms could be accommodated through additional work restrictions. See id.

24

The medical reviews Prudential obtained as part of Prezioso's second appeal further confirmed Prudential's determination. Dr. Topper reviewed the medical evidence Prezioso submitted, including the additional information submitted in the second appeal. Dr. Topper concluded that Prezioso's claims of weakness, a possible indication of neurological deficit, were more likely to be a result of Prezioso's mechanical pain, given its pattern. Id. at D000020. Prezioso's weakness was not subject to diagnosis and could not be reproduced on examination. Dr. Topper also noted that Prezioso underwent a spinal fusion, a treatment "typically utilized for discogenic mechanical pain" and not for radiculopathy. Id. Overall, Dr. Topper concluded that there was "no persuasive evidence that the claimant's pain stemmed from a disruption of neural tissue . . . ." Id. at D000021.

Although the SSA reached a different determination than Prudential, Prudential's decision to the contrary is not an abuse of discretion. Generally speaking, an ERISA plan administrator "is not bound by an SSA determination that a plan participant is 'disabled.'" Jackson v. Metro. Life Ins. Co., 303 F.3d 884, 889-90 (8th Cir. 2002) (citations omitted). In this case, Prudential's definition of "disability" has some functional similarity to the SSA's, but the two definitions are not the same. See Admin. Record at D000458. In short, the SSA weighed the evidence and made a determination as to the credibility of Prezioso's pain reports. Id. at D000461. Prudential was entitled to engage in the same process, provided it did so in a reasoned manner in light of the evidence; that it did not reach the same conclusion does not mean it abused its discretion.

The Court is bound by the abuse of discretion standard to affirm Prudential's determination. Prudential, and its reviewers, largely reached the same underlying conclusions as

Prezioso's doctors with respect to Prezioso's injuries. Where they differed most was in respect to the limiting effects of these injuries in terms of pain and other arguably subjective symptoms. In this regard, Prudential had substantial evidence justifying a denial of Prezioso's claim, and it weighed the evidence to reach a reasoned determination. While Prudential's failure to issue a timely decision on Prezioso's second appeal is troubling, Prudential nevertheless gathered evidence further affirming its initial appeal decision. Had Prezioso or Prudential received additional information that refuted the basis of Prudential's initial determination, as was the situation in <u>Seman</u>, the Court may have found differently. The Court does not doubt Prezioso experiences pain and day-to-day difficulty, and that this pain has disabled Prezioso to some degree. But the Court is compelled to affirm Prudential's decision because Prudential had sufficient evidence before it to determine that—with accommodations—Prezioso could perform the material and substantial duties of his occupation.

## IV. CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

1.      Plaintiff's Motion for Summary Judgment [Docket No. 31] is **DENIED**.

2.      Defendant's Motion for Summary Judgment [Docket No. 26] is **GRANTED**.

3.      All claims alleged in the Complaint [Docket No. 1] are **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  February 28, 2013.